**UNITED STATES v. SCHMUTZ et al.**

No. 11379.

District Court, D. Utah, C. D.

Jan. 27, 1932.

C. R. Hollingsworth, U. S. Atty., and George H. Lunt, Asst. U. S. Atty., both of Salt Lake City, Utah.

Samuel R. Thurman, of Salt Lake City, Utah, for defendants.

George P. Parker, Atty. Gen., for the State of Utah, amicus curiæ.

JOHNSON, District Judge.

Counsel for the defendants and of plaintiff have stipulated the facts in this case. After making the stipulation of facts it seems the defendants concluded to abandon the defense of the action and their counsel withdrew his appearance. Later, however, the Attorney General of the state of Utah requested permission to file a brief amicus curiæ, which was granted and a brief has been filed by him.

The case having been taken up for determination, I find that it was brought and has been submitted on the theory that it involved generally the question of the control by the state of the public waters of the state, and particularly whether the springs in question are public waters of the state subject to its control and disposition under the laws of the state governing the appropriation of the public unappropriated waters of the state.

These are very interesting and important questions, but I am unable to see how they are necessarily involved in this case. The controlling fact in this case is the one stipulated: "That the land upon which each of said springs rise and for a great distance contiguous to said springs is vacant and unappropriated land owned by the complainant," and "the land surrounding these springs for many miles in every direction is vacant, unappropriated, and unsurveyed land of the United States."

The claim of the defendants is based upon certificates of the state engineer of the state of Utah issued to them as appropriators of the waters of these springs pursuant to the laws of the state. As I have said, the case was brought and has been submitted on the theory that the primary question involved is the validity of their appropriation and the finality of the certificates of the state engineer confirming their appropriation. I cannot accept this theory. It appears not only that the lands on which these springs are situated are government lands, but also that the land surrounding these springs for many miles in every direction is vacant, unappropriated, and unsurveyed land of the United States.

It is further stipulated that the defendants, "without the consent or approval of complainant, entered upon the lands in and about Bumble Bee Spring or Grove's Creek, Maple Spring and Quaking Asp Spring and built, erected and constructed upon said lands ditches for the purpose of diverting, and which did divert, the waters of said spring, and the defendants further constructed water troughs and ponds for the purpose of impounding, and which did impound, the waters of said springs. The waters were so diverted and impounded by said defendants for the purpose of watering livestock owned by said defendants and for the purpose of exercising complete control and dominion over the waters of said springs and excluding and depriving all other persons from the use of said waters from said springs."

Although not expressly so stipulated, it is a conclusive inference from the foregoing that the defendants have taken exclusive possession of the lands on which these springs rise and adjacent thereto and have placed thereon troughs and ponds and are, or were, excluding others from access to the springs and to the use of the water taken therefrom. If the defendants had diverted the waters of the springs by means of ditches or pipe lines to lands owned by them, the question discussed by counsel in their briefs would be pertinent; but no one has suggested in the briefs that the state through its engineer, or otherwise, can give appropriators of the public waters of the state any right in or to the public lands of the United States. Congress alone can do that. Congress has granted appropriators of water for certain uses rights of way, etc., over the public land. By homestead and other laws it has given citizens the privilege of acquiring title to and the ownership of parts of the public domain. Under the mining laws it has given to citizens the right to become owners of parts of the public domain containing valuable minerals. The defendants in this case have not brought themselves within any act of Congress which authorizes them to take possession of these lands about these springs. They are trespassers and possibly might be prosecuted under some of the criminal laws of the United States. This being the situation, how can it be said that the validity of the order of the President of the United States made in 1926 is an issue in this case? When some of the lands withdrawn by order of the President are attempted to be taken pursuant to some law of the United States, by the defendants, or others, it will be time enough to consider the validity of the order.

I am unable to conceive any good reason for a difference of opinion between the United States and the state of Utah in respect to the real question involved. It appears that the government of the United States is at-

tempting to maintain these springs, and others like them, throughout the arid region of the west for the use of the general public, accessible alike to all. It seems to me that also should be the policy of the state. There should be, it seems to me, a hearty co-operation between the United States and the state of Utah in preserving little springs on the public domain like these for the use of all. If the laws of the state as written compel the state engineer to grant applications for the appropriation of the waters of small springs on the public domain like these, then such laws should be changed and others passed authorizing co-operation with the United States along the lines contemplated by the President in his withdrawal order of 1926.

Counsel for the government will prepare findings in conformity with the views herein expressed.